## APPEAL OF GEORGE MURDY, ET AL.

### [WILL OF MARY HAZLETT, DECEASED.]

FROM THE DECREE OF THE ORPHANS' COURT OF ALLEGHENY COUNTY.

Argued November 5, 1888—Decided January 7, 1889.

*(a)* A widow having a separate estate and with no blood relations, was declared a lunatic in 1883, without lucid intervals, and a committee appointed over her person and estate, who continued in charge until her death.

*(b)* While on a visit to relatives of her deceased husband in July, 1887, she complained to them of harsh treatment on the part of her committee and at her instance they began proceedings for his removal and for an account.

*(c)* In October, 1887, the committee forcibly took her from her friends and removed her to his own house where she remained until her death on March 15, 1888.

*(d)* On March 16, 1888, the committee presented for admission to probate a paper purporting to be the last will of the deceased, dated November 19, 1887, whilst the lunatic was at his house and under his control, giving to himself and wife the bulk of her estate.

1. On appeal by the proponents from the decree of the register refusing to admit said alleged will to probate, the foregoing facts appearing, and without sufficient evidence to overcome the presumption of undue influence raised by the proceedings in lunacy, the confidential relation between the committee and the deceased, and his power and control over her by virtue of his position, it was not error to refuse to order an issue devisavit vel non.

Before GORDON, C. J., PAXSON, GREEN, CLARK, WILLIAMS and HAND, JJ.; STERRETT, J., absent.

No. 205 October Term 1888, Sup. Ct.; court below, No. 472 March Term 1888, O. C.

On April 30, 1888, George Murdy and Mary A. Murdy presented their petition to the Orphans' Court setting forth that Mary Hazlett had died on March 15, 1888, leaving to survive her no husband, brother or sister, father or mother, or any other kin capable of inheriting her estate; that on March 16, 1888, a certain paper writing, dated November 19, 1887, purporting to

be the last will of said Mary Hazlett, and which in truth and in fact was her last will, duly executed by her in the presence of two subscribing witnesses, was presented to the register of wills to be admitted to probate; that on March 19, 1888, James E. Hazlett, and others (nephews by marriage of said Mary Hazlett), alleging themselves to be beneficiaries under an alleged will of the deceased of prior date, to wit, July 16, 1887, filed a caveat, and after hearing the testimony of the proponents and of the caveators, the register had entered a decree refusing to admit said testamentary paper of date November 19, 1887, to probate; praying leave to apppeal from said decree, and further that an issue be granted to determine:

1. Whether or not the said paper writing was duly executed by the said Mary Hazlett as and for her last will and testament.

2. Whether or not at the time of the execution of said paper, the said Mary Hazlett was of sound and disposing mind, memory and understanding, that is, possessed of testamentary capacity, and

3. Whether or not the execution of said paper writing was procured by fraud, and the exercise of undue and improper influence upon the part of your petitioners.

To the citation issued upon the foregoing petition, the caveators made answer, and a hearing was had.

The facts disclosed by the testimony submitted sufficiently appear in the decision of the court, HAWKINS, P. J., filed on July 2, 1888, as follows:

#### FINDING OF FACTS.

The register having refused to admit to probate the paper propounded here as the last will of Mrs. Mary Hazlett, this appeal was taken and a demand for an issue devisavit vel non made. The material facts are these:

In 1883 proceedings concerning the lunacy of Mrs. Hazlett were instituted with a view to the protection of her valuable property from improvident waste, and resulted in a finding of lunacy without lucid intervals. The estimated value of her property was $13,533.52. George Murdy was appointed committee, qualified, and entered upon the discharge of his duties. Mrs. Hazlett died on Thursday, March 15, 1888. Until with-

in a few months of her death she seems to have been permitted to select her place of abode, and resided with different families successively. She had no known blood relatives. In July, 1887, with the permission of her committee, she visited certain relatives of her late husband, in whom she seems to have taken an interest, and while there she executed a will in which she made these relatives her principal beneficiaries. She complained to them of harsh treatment on the part of Murdy, her committee; expressed great fear of him since he had attempted suicide, and importuned them to have him removed from the trust. In accordance with her request, proceedings were instituted on July 21, 1887, and the committee filed an account, to which exceptions were taken, and an auditor was appointed, before whom the matter is still pending. On October 22, 1887, Murdy, the committee, removed Mrs. Hazlett from the custody of her husband's relatives, forcibly and against her protest, and took her to his own house, where she remained until the time of her death.

After this enforced return to Murdy's house, certainly as early as the middle of October, 1887, Murdy, the committee, solicited his attorney in the pending proceedings on his account, to go out to his house for the purpose of attending to some business for the lunatic, Mrs. Hazlett, and that solicitation was continued until Saturday, November 19, 1887, when Mr. Quaill went, and remained until Sunday evening. Sunday forenoon Mr. Quaill spent in conversation with Mrs. Hazlett, and in the afternoon a will was drawn by him and executed by Mrs. Hazlett in which Murdy and his family were made the principal beneficiaries. One of the witnesses to the fact of execution of the will was the brother-in-law of Murdy, and the other his laborer. Murdy himself seems to have been in the room twice for short periods during the day, but said nothing.

On the day Mrs. Hazlett died, the two subscribing witnesses came to the register's office with a view to probate, but on the advice of Murdy's attorney they left and returned on the following day. Murdy had accompanied them part of the way on the first day. This will was in the possession of Mr. Quaill from the time of its execution until its offer to probate. Murdy denied that he knew the purport of the business for which

Mr. Quaill's services were desired by Mrs. Hazlett, or knew a will had been executed, until after Mrs. Hazlett's death; but the evidence shows beyond a reasonable doubt that he did know. A caveat having been filed to the admission of the will to probate, the proponents called upon the caveators for proof of interest. The will of July, under which the caveators claimed, was thereupon produced, and the testamentary capacity of testatrix at the date of its execution established. The proponents of the November will then examined the subscribing witnesses as to the fact of execution, and Mr. Quaill as to the testamentary capacity of testatrix on the day of execution, and also other witnesses as to her mental condition near that date.

The register refused to admit this will to probate; whereupon the present appeal was taken and a demand for issue was made. At the hearing before this court the case was submitted on the testimony taken before the register. Counsel for appellant having contended that the testimony offered by the caveators in support of the will of July, raised a presumption of continued sanity, this court intimated that such was the ordinary rule, but that the decree of lunacy without lucid intervals had reversed the ordinary rule; and thereupon counsel asked that he be permitted to offer additional testimony as to testamentary capacity, which was granted. The testimony shows that at the date of the writing of November, 1887, Mrs. Hazlett had such knowledge of the objects and subjects of her bounty as persons of her advanced age ordinarily possess, but that she was very easily influenced by those who immediately surrounded her. The testimony also shows that the only persons to whom Mrs. Hazlett expressed a wish as to this alleged disposition of her estate were George Murdy, her committee, who, with his family, are the principal beneficiaries, and Mr. Quaill, his counsellor; and Mr. Quaill's only opportunity of testing her capacity was in her committee's house. The circumstances leading up to the day on which the paper was executed rest in the testimony of the committee alone.

The court finds that proponent has not overcome the presumption of undue influence raised by the proceedings in lunacy.

OPINION.

It may be conceded that, leaving out of consideration the element of trust relation which existed as between the alleged testatrix and her principal beneficiary, the evidence submitted would be sufficient to justify the grant of an issue devisavit vel non. But upon the whole case this court is of opinion and finds that the writing propounded as the last will of Mrs. Hazlett cannot be sustained, and an issue must therefore be refused. The reasons which have led to this conclusion are, briefly stated, these:

1. The alleged will is in contravention of public policy. Mrs. Hazlett had been adjudged a lunatic without lucid intervals by a court of competent jurisdiction, and that finding was still, in contemplation of law, in full force and virtue at the date of execution of this writing. Her committee, intrusted by the same jurisdiction with the custody and care of her person and estate, could not become her beneficiary, because, so far as he was concerned, it was inconsistent with his official relation to her. He was invested by authority of law with dominion over her person and estate, because she was incapable of intelligent action. Dominion in him was inconsistent with testamentary disposition by her. He could not divest himself of his office at will, much less pervert it to his personal profit. Any other theory than this must necessarily place the estate of this helpless class at the mercy of the committee. The policy of law is to throw every safeguard around the administration of trusts, and by taking away the power prevent abuse.

There is a class of cases in which it has been held that where one who stands in a confidential relation to a testator with impaired faculties at the time of making the will, receives a considerable benefit therein, a presumption of undue influence arises and the burden of proof is shifted on him to show that such benefit was the result of free and unbiased action on the part of testator: Culbertson's App., 84 Pa. 303. This is a liberal extension of the power of testamentary disposition. But no court has gone so far as to hold that a will made by one judicially found to be a lunatic without lucid intervals, in favor of the committee in charge of his person and estate, can be sustained by any measure of proof, and thus practically set

aside the finding without the intervention of the tribunal which made it. This case does not come within the reason of the rule, but as already seen, comes within the prohibition of public policy.

2. But assume that the case does come within the rule of Culbertson's Appeal, supra, and like cases, the evidence falls far short of overcoming the presumption of undue influence. There is no evidence, other than that of the committee himself, that Mrs. Hazlett, either before or after the day of execution of the writing propounded here as her will, expressed any intention or desire to make such a will or confer any benefit on the committee or his family. Although a person of admittedly weak mind, and easily influenced, there is no evidence that she consulted any disinterested person in reference to the matter. On the other hand, the evidence of her hostility to her committee and of her intention to give her estate to others, when she was not under his dominion, is strong and direct. Her expressions of friendship for and gratitude to her committee were confided to his counsel alone on the single occasion of the making of the alleged will, and these were made under circumstances which only tend to strengthen the presumption of undue influence. The frequent expressions by Mrs. Hazlett of fear of her committee, and the execution of a will in favor of her late husband's relatives, who would naturally be the objects of her bounty, shortly before her forcible removal to her committee's house; the execution of the writing now offered as her will after such forcible removal from the care of her husband's relatives, while under the committee's dominion and in his house; the committee's persistent and successful efforts, pending exceptions to his account and proceedings for his removal from the trust, to induce his attorney in those proceedings to go out to his house to make her will; and the committee's denial of knowledge of the purposes of his attorney's visit, are facts which go to show directly undue influence. If under such circumstances a will can be sustained, no man's property is safe from the wiles of designing men who have been invested with trusts.

The issue must be refused and the appeal dismissed.

The court having signed a formal order dismissing the appeal

and refusing the issue as prayed for, the proponents thereupon took this appeal, and assigned the order as error.

*Mr. George H. Quaill*, for the appellants:

1. Not only did the witnesses called by the proponents testify to mental capacity when the paper offered for probate was executed, but the caveators and those interested in the paper dated July 16, 1887, all testified to the mental capacity of the testator at that date. The law presumes mental capacity, and it also presumes the continuance of a condition once established. To consider the credibility and weigh the testimony of witnesses offered to overcome a presumption, is peculiarly the province of a jury, not of the court. Hence, when the execution of a testamentary paper is proved, it is error to refuse an issue, or withhold it from the jury on the ground that the evidence shows that the person by whom it was executed was incapable of understanding the nature of the act. This would be to decide as matter of law that which is purely a matter of fact: Rees v. Stillé, 38 Pa. 138. "Strong as evidence against a prima facie case may be, the evidence must be submitted to a jury:" Mason v. Ammon, 117 Pa. 127.

2. From the testimony (commented upon at length) we think there was not only sufficient evidence to entitle proponents to an issue, but that testamentary capacity was clearly established. The inquisition of lunacy found (at best but prima facie evidence of incapacity) produced to meet this evidence, was completely overcome by proponents' evidence. And an inquisition of lunacy found it but prima facie evidence: Titlow v. Titlow, 54 Pa. 216 ; Leckey v. Cunningham, 56 Pa. 370; Harden v. Hays, 9 Pa. 151 ; Gangwere's Est., 14 Pa. 417 ; Hutchinson v. Sandt, 4 R. 234. Old age, failure of memory, or habitual drunkenness, will not per se constitute incapacity to make a will: Grubbs v. McDonald, 91 Pa. 236; Leckey v. Cunningham, 56 Pa. 370; Titlow v. Titlow, 54 Pa. 216 ; Dornick v. Reichenback, 10 S. & R. 84; Tenbrook v. Lee, 5 Clark 37; Horbach v. Denniston, 3 Pittsb. 49. As a general proposition, less capacity is sufficient to make a valid will than to transmit ordinary business : Thompson v. Kyner, 65 Pa. 368.

3. The burden is upon those alleging it to prove undue influence, which, in order to avoid a will must be such as to destroy

the free agency of the testatrix at the time the instrument was made and in the act of making it. Threats, violence, or any undue influence, long past, are not evidence to impeach a will: McMahon v. Ryan, 20 Pa. 329; Thompson v. Kyner, 65 Pa. 379; Tawney v. Long, 76 Pa. 106; Frew v. Clarke, 80 Pa. 170; Wainwright's App., 89 Pa. 220; Ketterer's Est., 17 W. N. 15.

*Mr. James Fitzsimmons* (with him *Mr. John S. Robb*), for the appellees:

1. The testimony of the subscribing witnesses utterly failed to show that the testatrix was of sound mind when the alleged will was executed. It was their duty to fully satisfy themselves of that fact before they attested the execution. Attesting witnesses are regarded in the law as persons placed around the testator in order that no fraud may be practiced upon him in the execution of the will, and to judge of his capacity: 2 Greenl. Ev., § 691; 1 Jarman on Wills, 62; Dean v. Fuller, 40 Pa. 474; Buckminster v. Perry, 4 Mass. 594; Werstler v. Custer, 46 Pa. 502. In no place does the evidence of the proponents show that the deceased was of sound and disposing mind and memory on November 19, 1887. Why refer insufficient evidence to the jury? Dean v. Fuller, supra; Irish v. Smith, 8 S. & R. 581; Rambler v. Tryon, 7 S. & R. 90.

2. A finding of lunacy, with lucid intervals, casts the burden of showing sanity when the will was made, upon the proponents: Titlow v. Titlow, 54 Pa. 217; Harden v. Hays, 9 Pa. 152; Cuthbertson's App., 97 Pa. 163; Boyd v. Boyd, 66 Pa. 283. Moreover, the relations existing between the proponents of the alleged will and the deceased, at the time the will was made, placed upon them the burden of doing more than showing the formal execution of the will in the presence of the two subscribing witnesses called for that purpose. They must go farther and by some sufficient evidence rebut the presumption arising out of that relation, that the disposition made was not the exercise of the free will of the testatrix: Boyd v. Boyd, 66 Pa. 294; Redfield on Wills, 529; Cuthbertson's App., supra; Harden v. Hays, supra; Todd v. Grove, 33 Md. 183; Tyler v. Gardner, 35 N. Y. 559; Howell v. Robinson, 11 Barb. 564; Long v. Mulford, 17 Ohio (N. S.) 484 (93 Amer. D. 638); 2 White & Tudor, Lead. Cas. in Eq., 1193; Marsh v. Tyrrell, 2

Hagg. 186; Garvin v. Williams, 44 Mo. 465 (100 Amer. D. 314).

3. The overwhelming weight of the evidence is that Mrs. Hazlett despised Murd--: that she was afraid of him: that she sought to escape from his pow.. : all occasions, and that she so expressed herself to persons without number. Such facts are entitled to consideration: Irish v. Smith, 8 S. & R. 573; Norris v. Sheppard, 20 Pa. 475; Titlow v. Titlow, 54 Pa. 216, 231; Roberts v. Warwick, 13 Ala. 68; Gilbert v. Gilbert, 22 Ala. 529 (58 Amer. D. 268); O'Neale v. Murray, 4 Bradf. 311; Dietrick v. Dietrick, 5 S. & R. 207; Iddings v. Iddings, 7 S. & R. 111; Neel v. Potter, 40 Pa. 483. Moreover, although Murdy denied in his testimony that he knew that the will of November 19, 1887, was executed at his house, yet within an hour after Mrs. Hazlett's death he hurried the subscribing witnesses to the register's office to have the will proved, and her near friends and relatives learned of her death only by mere rumor. The cases of Crisbell v. DuBois, 4 Barb. 397; Delafield v. Parrish, 25 N. Y. 41; 2 White & T., Lead. Cas. in Eq., 1289; Swinburne on Wills, part 7, § 18, stamp such conduct as overwhelming evidence of undue influence.

OPINION, MR. JUSTICE PAXSON:

The court below committed no error in refusing the demand for an issue devisavit vel non. The testatrix was an old woman with a large estate, who had been duly found a lunatic in 1883, without lucid intervals. The appellant, George Murdy, was appointed the committee of her person and estate, and so continued down to the time of her death. She had no blood relations, and in July, 1887, was permitted by her committee to visit some relations of her deceased husband. She complained to them of harsh treatment on the part of Murdy, and importuned them to have him removed from the trust. In obedience to her request proceedings were commenced against him, which resulted in his filing an account. The account was referred to an auditor, and is still pending. In October, 1887, Murdy forcibly took her away from her friends and removed her to his own house, where she remained until the time of her death. Whilst in his house and under his control he procured from her a will giving to himself and wife the bulk of her estate.

The court below found, and we think correctly, that the proponent had not overcome the presumption of undue influence raised by the proceedings in lunacy. It would require very strong evidence to sustain a will under such circumstances as these. The appellant not only occupied a confidential relation to the testatrix but he had power and control over her by virtue of his position as her committee. When to this is added the fact that she was a lunatic, without lucid intervals, duly found so by inquisition, the attempt to set up this will seems almost grotesque, to use no harsher word.

> The decree is affirmed, and the appeal dismissed at the cost of the appellants.

Argued November 5, 1888—Decided January 7, 1889.